IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jerry S. Estep, et al.,

     Plaintiffs,

     v.                  Case No. 2:12-cv-1127

Manley Deas Kochalski, LLC,

     Defendant.

<u>OPINION AND ORDER</u>

This is an action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), by plaintiffs Jerry S. Estep and Amber Estep against defendant Manly Deas Kochalski, LLC, an Ohio law firm. Plaintiffs allege that on March 29, 2011, defendant filed a complaint in foreclosure against them on behalf of Wells Fargo Bank, N.A., in the Court of Common Pleas of Franklin County, Ohio, styled as Case No. 11-CV-004005. Complaint, ¶ 5. Plaintiffs further allege that on December 12, 2011, they received a form letter from defendant, attached as Exhibit A to the complaint in the instant case, advising them of the requirements for continued occupancy of the property upon transfer of title to the Department of Housing and Urban Development ("HUD"). Complaint, ¶ 6. Plaintiffs contend that this correspondence violated several provisions of the FDCPA. This matter is before the court on defendant's motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim for which relief may be granted.

I. Rule 12(b)(6) Standards

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the

plaintiffs, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim. Campbell v. PMI Food Equipment Group, Inc., 509 F.3d 776, 780 (6th Cir. 2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Id. Determining whether a complaint states a plausible claim for relief is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2).  Id.

Plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Ashcroft, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Association of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).

II. Plaintiffs' Claims

Plaintiffs' claims are based on a form letter attached as Exhibit A to their complaint.  This letter, dated December 12, 2011, is addressed to "OCCUPANT" at 388 Murray Hill Road North, Columbus, OH 43228, which is also the address where plaintiffs allegedly reside.  See Complaint, ¶ 3.  Below the address, the letter states "Re:" followed by the case caption and number of the foreclosure action in the common pleas court filed by Wells Fargo against plaintiffs, the FHA case number, the loan number, and defendant's file number.  The text of the letter states:

> The mortgage for the property in which you are living is about to be foreclosed (sometimes referred to as repossessed).  We expect that ownership of the property will be transferred to Wells Fargo probably within the next 60 to 90 days.  Shortly thereafter, it is probable that ownership will be transferred to the Secretary of Housing and Urban Development (HUD).
>
> HUD generally requires that there be no one living in

3

properties for which it accepts ownership unless certain conditions are met. We have enclosed a copy of those conditions in Attachment 1. These conditions should be read carefully to help you decide whether you wish to apply to continue living in the house.

If you wish to submit a request to continue to live in this property after HUD becomes owner, your written request must be received by HUD within 20 days of the date at the top of this letter. Oral requests are not permitted. We recommend that you use the enclosed Attachment 2, "Request for Occupied Conveyance," in making your request as it gives HUD information it needs to make its decision. Also, complete boxes 1, 7 and 8 on Attachment 3, "Request for Verification of Employment," and send it to HUD with your request. If you have additional information which you wish to include with your request you may write it on additional pages which can be attached to the form.... If you believe that you can meet the condition for temporary, permanent, or long-term illness or injury ... you should say so in your request and include documentation supporting your claim.

Complaint, Ex. A. The letter goes on to advise that if "HUD approves your request for occupancy, it will be for a temporary period." The letter further states that if HUD denies the request, that denial may be appealed. The letter then states, under the heading "IMPORTANT NOTICE," that "YOU MUST REPLY TO THE HUD OFFICE IN WRITING WITHIN 20 DAYS OF THE DATE ON THIS LETTER OR YOU WILL BE REQUIRED TO MOVE FROM THE PROPERTY." Complaint, Ex. A. Attached to the letter are HUD forms for requesting occupancy of a conveyed residence.

Plaintiffs allege that the HUD letter: 1) constituted a communication with plaintiffs by defendant knowing that plaintiffs were represented by counsel, in violation of 15 U.S.C. §1692c(a)(2); 2) threatened to take action that cannot be legally taken or that is not intended to be taken in connection with the collection of any debt, in violation of 15 U.S.C. §1692e(5); 3)

4

falsely represented that within 60 to 90 days, ownership of the property would transfer to Wells Fargo, in violation of 15 U.S.C. §1692e(10); 4) falsely represented that if plaintiffs did not send in the enclosed documents within 20 days of the date of the letter, they would be required to move from their home, in violation of §1692e(10); and 5) threatened to take possession of plaintiffs' property when there was no present right to possession of the property, in violation of 15 U.S.C. §1692f.

III. Motion to Dismiss

A. HUD Letter Not a "Communication" Within Scope of the FDCPA

Defendant first argues that all of plaintiffs' claims under the FDCPA fail because the HUD occupant letter was not a "communication" within the scope of the FDCPA. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. §1692(e); Gionis v. Javitch, Block, Rathbone, LLP, 238 F.App'x 24, 27 (6th Cir. 2007). Violations under the FDCPA are analyzed under the "least sophisticated consumer" test. Id. at 28. This test is objective, and asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them. Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 172 (6th Cir. 2011).

"The FDCPA speaks in terms of debt collection." Glazer v. Chase Home Finance LLC, 704 F.3d 453, 459 (6th Cir. 2013). Thus, to be liable under the statute's substantive provisions, a debt collector's targeted conduct must have been taken "in connection with the collection of any debt," see §§1692c(a)(2) and 1692e, or in order "to collect or attempt to collect any debt," see §1692f.

5

Id. at 459-60. If a purpose of an activity taken in relation to a debt is to obtain payment of the debt, the activity is properly considered debt collection. Id. at 461.

The term "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. §1692a(2). To be actionable under the FDCPA, "a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one." Grden, 643 F.3d at 173. Thus, an explicit demand for payment is not always necessary for the statute to apply. Id. (citing Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 385 (7th Cir. 2010)). On the other hand, the statute does not apply to every communication between a debt collector and a debtor. Id. Rather, "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Id. (noting that a letter that is not itself a collection attempt but that aims to make such an attempt more likely to succeed is one that has the requisite connection).

For example, in Grden, the debt collector sent loan balance statements to plaintiff after plaintiff requested those statements. The statements showed the balance due on the loan but did not demand payment or threaten any consequences if plaintiff did not pay. The court held that the balance statements were not a "communication" within the meaning of the FDCPA. Id. Rather, the court concluded that they were merely a ministerial response to a debtor inquiry, not part of a strategy to make payment more likely, and that no reasonable jury could find that an animating purpose of the balance statements was to induce payment by plaintiff. Id.;

see also Santoro v. CTC Foreclosure Service, 12 F.App'x 476, 480 (9th Cir. 2001)(statutorily required notice of pending foreclosure sale of property sent by debt collector did not seek to collect debt, and was not forbidden under FDCPA); Bailey v. Security Nat'l Servicing Corp., 154 F.3d 384, 389 (7th Cir. 1998)(letter suggesting loan workout options is not seeking to collect a debt; "A warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstances wherein payments are missed and a real dun must be mailed."); Knight v. Schulman, 102 F.Supp.2d 867, 872-73 (S.D.Ohio 1999)(letter from debt collector to plaintiff acknowledging receipt of payment in full of amount of judgment was not a communication "made to collect a debt").

The HUD notice letter in this case is a requirement under HUD's regulatory scheme governing the conveyance of occupied property. See 24 C.F.R. §203.675. These regulations further HUD's "policy to reduce the inventory of acquired properties in a manner that expands homeownership opportunities, strengthens neighborhoods and communities, and ensures a maximum return to the mortgage insurance fund." 24 C.F.R. §203.670. HUD usually requires that any property conveyed to it be conveyed vacant unless the occupant makes a timely request for permission to continue to occupy the property. 24 C.F.R. §203.678(a). Permission for continued occupancy may be sought under certain circumstances, including where: (1) the occupant has an illness or injury which would be aggravated by moving from the property, 24 C.F.R. §203.670(b)(1); (2) state law prohibits eviction of a tenant who is making monthly

7

payments, 24 C.F.R. §203.670(b)(2); or (3) it is otherwise in the interest of HUD to accept conveyance of occupied property.  24 C.F.R. §203.670(b)(3).  It is in HUD's interest to accept conveyance of occupied property where occupancy of the property is essential to protect it from vandalism, where property in the area remains on HUD's unsold inventory for over six months, or where the high cost of eviction or relocation expenses makes eviction impractical.  24 C.F.R. §203.671(a), (b) and (d).

The regulations further provide:

(a) At least 60 days, but not more than 90 days, before the date on which the mortgagee reasonably expects to acquire title to the property, the mortgagee shall notify the mortgagor and each head of household who is actually occupying a unit of the property of its potential acquisition by HUD.  The mortgagee shall send a copy of this notification to the appropriate HUD Field Office.

(b) The notice shall provide a brief summary of the conditions under which continued occupancy is permissible and advise them that:
(1) Potential acquisition of the property by the Secretary is pending;
(2) The Secretary requires that properties be vacant at the time of conveyance to the Secretary, unless the mortgagor or other occupant can meet the conditions for continued occupancy in §203.670, the habitability criteria in §203.673, and the eligibility criteria in §203.674;
(3) An occupant may request permission to remain in occupancy in the event of acquisition of the property by the Secretary by notifying the HUD Field Office in writing, with any required documentation, within 20 days of the date of the mortgagee's notice to the occupant[.]

24 C.F.R. §203.675(a), (b)(1)-(3).  The notice must advise the occupant of the requirements for requesting continued occupancy due to illness or injury, and must also state that "[i]f an occupant fails to make a timely request, the property must be vacated before the scheduled time of acquisition."  24 C.F.R. §203.675(b)(4)-(5).

8

The Eleventh Circuit has held that the notice letter required under §203.675(b) is not a "communication" regarding the collection of a debt within the scope of the FDCPA.  See Clark v. Shapiro and Pickett, LLP, 452 F.App'x 890, 895 (11th Cir. 2012).

There is no language in the letter sent by defendant suggesting that its purpose was to collect on the debt owed by plaintiffs.  The letter is addressed to "OCCUPANT" and makes no reference to payment of the amount owed by plaintiffs on the loan. After the introductory "Re:" the letter identifies the caption of the state court foreclosure action and provides the FHA case number, the loan number, and defendant's file number.  However, the text of the letter does not demand payment, and it only refers to the foreclosure action in connection with the possible eventual transfer of the property to HUD.  This introductory information is provided to assist the occupant in completing the HUD form for requesting an occupied conveyance.  The HUD form requires the occupant to provide the name of the mortgage company or lender, the mortgage loan number, and the FHA case number.  Including defendant's file number on the letter would assist defendant in answering inquiries concerning the letter.  The case number and caption of the foreclosure action would be helpful to an occupant who wishes to verify that a foreclosure action is pending or to seek additional information concerning the foreclosure action.  For example, such information would assist a tenant occupant in deciding whether to exercise the tenant's right of first refusal to purchase the property from HUD under 24 C.F.R. §291.100(a)(4).

Plaintiffs argue that the HUD letter is a communication in regard to the debt because it did not track the exact language of

9

§203.675(b).   In particular, plaintiffs note that the letter contains the following notice: "YOU MUST REPLY TO THE HUD OFFICE IN WRITING WITHIN 20 DAYS OF THE DATE ON THIS LETTER OR YOU WILL BE REQUIRED TO MOVE FROM THE PROPERTY."  Plaintiffs contend that this notice deviates from the language found in §203.675(b)(5). However, §203.675(b) does not require that the mortgagee use the precise regulatory language in the required notice.  It simply states that the mortgagee must provide "a brief summary of the conditions under which continued occupancy is permissible[.]" §203.675(b)(1).

Although the language of the above notice does not repeat the exact language used in §203.675(b)(5), it is not inconsistent with that section or the HUD regulations.  Section 203.675(b)(5) states that the occupant must be advised that "[i]f an occupant fails to make a timely request, the property must be vacated before the scheduled time of acquisition."  Under §203.676, a request for continued occupancy must be made by notifying the HUD Field Office in writing "within 20 days of the date of the mortgagee's notice of pending acquisition."  The HUD regulations further provide that "HUD will require that the property be conveyed vacant if the occupant fails to request permission to continue to occupy with the time period specified in §203.676[.]"  Thus, the letter was correct when it advised that failure to contact the HUD office within 20 days of the date of the letter would result in the occupant being required to move from the property.

Plaintiffs contend that the letter was intended to assist in the collection of a debt by pressuring them to vacate the property, arguing that the notice suggests that the occupant would be

required to vacate the premises within 20 days of the date on the letter if application to HUD is not made.  Again, the notice states, "YOU MUST REPLY TO THE HUD OFFICE IN WRITING WITHIN 20 DAYS OF THE DATE ON THIS LETTER OR YOU WILL BE REQUIRED TO MOVE FROM THE PROPERTY."  The notice clearly indicates that it is the reply to the HUD office which is due within 20 days.  The notice says nothing about the occupant being required to move from the property within 20 days, and the remainder of the letter suggests otherwise. The first paragraph of the letter states that ownership of the property was expected to be transferred to Wells Fargo "within the next 60 to 90 days" and that "[s]hortly thereafter, it is probable that ownership will be transferred" to HUD.  No date was specified after the words "Sale Date."  The letter indicates that ownership of the property had not yet been transferred to Wells Fargo, and that the transfer to HUD would not occur until after the transfer of the property to Wells Fargo.  The letter also clearly states that it is HUD (not Wells Fargo or defendant) which "generally requires that there be no one living in properties for which it accepts ownership" unless certain conditions are met.  Even the least sophisticated consumer would be able to glean from the letter as a whole that because no definite date had been set for the acquisition of the property by HUD, there was also no definite date for vacating the property.

Plaintiffs further argue that the letter was sent "in connection with the collection of any debt" or for the purpose of "collect[ing] or attempt[ing] to collect any debt" because it can be construed as an attempt on defendant's part to convince plaintiffs to vacate the premises voluntarily to save Wells Fargo

the costs of an eviction.  However, there is no language in the letter which could reasonably be construed as encouraging the occupant to leave the property, or as evidencing any intent on the part of defendant to so influence the occupant.  Rather, the text of the letter indicates that its sole purpose is to inform the occupant of what he or she needed to do to apply to HUD to remain in the property.  For example, the letter invites the occupant to carefully read the conditions for continued occupancy "to help you decide whether you wish to apply to continue living in the house." The letter recommends that the occupant use the enclosed HUD forms to make a request for continued occupancy.  The letter further states that "[i]f you believe that you can meet the condition for a temporary, permanent, or long-term illness or injury ... you should say so in your request and include documentation supporting your claim."  Even the least sophisticated consumer would not construe this letter as one encouraging the occupant to voluntarily vacate the property; rather, the letter provides the necessary information for applying to HUD to remain on the property.

Important policy considerations also weigh against broadly construing the HUD notice in this case as a per se prohibited "communication" under the FDCPA.  It makes sense for a mortgagee to assign its noticing obligation under §203.675 to the law firm familiar with the foreclosure action to ensure compliance with HUD's regulations, which serve a valuable public purpose of their own.  Law firms acting as debt collectors should not be wary of undertaking this task for fear of violating the FDCPA while satisfying HUD's notice requirements, which are triggered during a foreclosure action.  That is not to say that debt collectors can

12

use the HUD notice letter as a vehicle for making extraneous dunning statements clearly outside the scope of HUD's regulations which are intended to prompt payment of the debt. However, the text of the letter in this case contains no such statements, and plaintiffs have otherwise pleaded no facts sufficient to indicate that the purpose of the letter was anything other than compliance with the notice requirements of §203.675.

The court concludes that plaintiffs have failed to plead the existence of an unlawful communication "in connection with the collection of any debt" or for the purpose of "collect[ing] or attempt[ing] to collect any debt" as required to state a claim under the FDCPA, and that all of plaintiffs' claims must be dismissed on this ground.

B. Failure to Plead a "Debt" under the FDCPA

Defendant also argues that plaintiffs have failed to plead the existence of a "debt" as that term is defined under the FDCPA. The term "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. §1692a(5). To prove a claim under the FDCPA, a plaintiff must show: (1) that he is a "consumer" as defined in 15 U.S.C. §1692a(3); (2) that the "debt" arises out of a transaction which is "primarily for personal, family or household purposes; (3) defendant is a "debt collector" as defined in the FDCPA; and (4) defendant has violated one of the prohibitions in the FDCPA. See Wallace v. Washington Mutual Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012); Whittiker v. Deutsche Bank Nat'l Trust

13

Co., 605 F.Supp.2d 914, 928 (N.D.Ohio 2009)(to state a claim under the FDCPA, plaintiff must allege that the debt was created primarily for personal, family or household purposes). Defendant contends that the plaintiffs have failed to allege that the property in the foreclosure action was purchased primarily for personal, family, or household purposes.

Plaintiffs alleged in their complaint that they reside at the premises. However, they have not alleged that they incurred the debt to purchase the property primarily for personal, family, or household purposes, as opposed to some other purpose, such as for a business investment. The fact that they are currently residing at the property is not sufficient to allege that they acquired the property primarily for personal, family, or household purposes. For example, it is possible for a consumer to acquire property primarily to generate income as rental property, but then to use it later as a temporary residence while moving from one residence to another or while awaiting the construction of the consumer's primary residence.

Plaintiffs allege that they are "consumers as defined in 15 U.S.C. §1692a(3)." Complaint, ¶ 3. However, they do not allege that they are consumers in relation to the debt which is the subject of the foreclosure action. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. Association of Cleveland Fire Fighters, 502 F.3d at 548. In addition, being a "consumer" is only one element of an FDCPA claim. See Whittiker, 605 F.Supp.2d at 926 (noting elements of a §1692e claim). The term "consumer" is defined as "any natural person

14

obligated or allegedly obligated to pay <u>any</u> <u>debt</u>." 15 U.S.C. §1692a(3)(emphasis supplied). The statute then goes on in §1692a(5) to narrow the type of debt which qualifies for protection under the FDCPA, that being debts "primarily for personal, family, or household purposes." The existence of this type of a debt is a distinct element of an FDCPA claim. <u>See</u> <u>Whittiker</u>, 605 F.Supp.2d at 926. Thus, the fact that plaintiffs are allegedly "consumers" does not suffice to allege the additional element that their debt was primarily for personal, family, or household purposes.

Plaintiffs note that under §203.675, the mortgagee is required to send the notice letter to the mortgagor and to "each head of household who is actually occupying the unit." §203.675(a). Plaintiffs note that the notice letter was addressed to "OCCUPANT," and that they received it because they were residing at the property at the time. They argue that because they received the occupant letter as a "head of household" under §203.675(a), they also must have been occupying the property for "household purposes" as that term is used in §1692a(5). However, the HUD regulations have nothing to do with the FDCPA, and §203.675(a) has nothing to do with the purposes of the debt incurred to purchase the property. The purpose of §203.675(a) is to ensure that occupants of a foreclosed property are aware of their right to petition HUD for continued occupancy after the property is transferred to HUD. Section §203.675(a) specifies that the notice letter be sent to "each head of household who is actually occupying a unit," as distinguished from requiring that the letter be sent to every individual occupying the premises. The fact that a mortgagor currently occupying the property happens to receive an occupant

15

letter as a "head of household" is not sufficient to allege that the debt stemming from the purchase of the property was incurred by the mortgagor primarily for household purposes.

The court concludes that plaintiffs have failed to allege facts showing that the purpose of their debt was primarily for personal, family, or household purposes, a necessary element of their FDCPA claim. Even assuming that plaintiffs could allege facts sufficient to plead this element, plaintiffs' claims would still fail because, as discussed in Section III.A., the HUD letter was not sent "in connection with the collection of any debt" or taken in order "to collect or attempt to collect any debt."

C. Failure to Plead a Claim under §1692c(a)(2)

Plaintiffs allege that defendant violated §1692c(a)(2), which prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt[.]" §1692c(a)(2); Complaint, ¶ 11(a). In order for a violation to occur, §1692c(a)(2) requires that the debt collector have actual knowledge that it was communicating with a consumer who was represented by counsel when it sent the communication to that consumer. See Schmitt v. FMA Alliance, 398 F.3d 995, 997 (8th Cir. 2005); Randolph v. IMBS, Inc., 368 F.3d 726, 729 (7th Cir. 2004); Bacelli v. MFP, Inc., 729 F.Supp.2d 1328, 1334 (M.D.Fla. 2010). Defendant contends that plaintiffs have failed to plead sufficient facts to show that defendant knew it was communicating with plaintiffs in sending the HUD letter addressed to "OCCUPANT" because plaintiffs have not alleged that defendant knew that plaintiffs were occupying the property.

16

Plaintiffs have pleaded that they reside at 388 North Murray Hill Road, that defendant filed a complaint for foreclosure on behalf of Wells Fargo in state court, and that plaintiffs, represented by counsel, filed an answer in that case on September 30, 2011. Complaint, ¶¶ 3, 5. Thus, the complaint pleads sufficient facts to indicate that defendant knew that plaintiffs were represented by counsel in the foreclosure action. However, plaintiffs have not pleaded facts showing that defendant knew that plaintiffs were residing at the property which was the subject of the foreclosure action, and would therefore receive the occupant letter. The fact that plaintiffs allegedly reside at the property, or that one or both of the plaintiffs had signed the mortgage and note for the property under foreclosure, does not mean that defendant should have known that they were actually living at the property. It is conceivable that the property could have been purchased by plaintiffs for use as rental property or for the use of some other family member. The letter itself, which is addressed to "OCCUPANT," raises no inference that defendant knew who was actually occupying the property.

Plaintiffs have not alleged facts sufficient to show that defendant had actual knowledge that plaintiffs were residing at the property being foreclosed or that the occupant letter would be received by plaintiffs so as to state a claim under §1692c(a)(2). However, even if plaintiffs could plead additional facts showing such knowledge, that would not be enough to save their §1692(a)(2) claim. Plaintiffs would also have to allege facts showing that defendant knew that no other head of household was occupying the property or a portion of the property, as defendant would be

17

required to send notice to any other head of household.  See §203.675 (notice must be sent to "each head of household who is actually occupying a unit of the property").  There is no prohibition in the HUD regulations against sending the §203.675 notice letter to an occupant known by the lender or its agent to be represented by counsel. In any event, plaintiffs' §1692c(a)(2) claim would still fail because, as discussed in Section III.A. above, the HUD letter in this case is not a communication "in connection with the collection of any debt[.]"

D. Alleged Violations of §1692e

 Defendant further argues that the complaint fails to state claims under §1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt."  §1692e. "Whether a debt collector's actions are false, deceptive, or misleading under §1692e is based on whether the 'least sophisticated consumer' would be misled by defendant's actions." Wallace, 683 F.3d at 326.  The statement must be materially false or misleading, that is, the statement must be technically false, and one which would tend to mislead or confuse the reasonable unsophisticated consumer.  Id. at 326-27.

 Defendant argues that plaintiffs' complaint fails to state a claim under §1692e(5), which prohibits conduct involving "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." §1692e(5).  The allegations in the complaint, see Complaint, ¶ 11(b), simply repeat the language of the statute and do not specify what the nature of the threatened action was.  Plaintiffs claim in their memorandum contra that the

letter threatens to dispossess them of their property.  However, the HUD notice letter contains no statements by Wells Fargo or defendant threatening to take any action, legal or illegal, to evict plaintiffs.  The letter simply provides notice of HUD policies to the occupant of the property in the event that the property is acquired by HUD, and advises the occupant about applying to HUD to remain in the property.  No claim under §1692e(5) has been stated in the complaint.

Defendant also argues that plaintiffs have failed to allege a violation of §1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt[.]"  §1692e(10).  Plaintiffs first allege that defendant violated §1692e(10) by falsely representing that within 60 to 90 days, ownership of plaintiff's house would transfer to Wells Fargo.[1]  Complaint, ¶ 11(c).  Plaintiffs allege that defendant served discovery requests in the foreclosure action on plaintiffs on November 22, 2011.  Complaint, ¶ 5.  Plaintiffs further allege that on December 12, 2011, the date of the HUD letter, discovery responses from Wells Fargo were still outstanding, and that plaintiffs were awaiting a decision on their request for a loan modification.  Complaint, ¶ 7.  Plaintiffs then summarily allege that defendant had no reasonable basis to believe that a judgment would be entered in the foreclosure action within 60 to 90 days. Complaint, ¶ 8.

The HUD letter itself was not phrased in definite terms.

---

[1]Section 203.675 requires the mortgagee to send the HUD notice at least 60 days, but not more than 90 days, "before the mortgagee reasonably expects to acquire title to the property[.]"  §203.675(a).  Thus, the regulations gives some discretion to the mortgagee in determining when to send the letter.

Rather, the letter stated, "We expect that ownership of the property will be transferred to Wells Fargo probably within the next 60 to 90 days. Shortly thereafter, it is probable that ownership will be transferred to [HUD]." Complaint, Ex. A (emphasis supplied). These statements amount to no more than opinions or expectations of future events. Even assuming that plaintiffs could allege facts sufficient to show that defendant could not have reasonably expected a foreclosure decree to be entered within the next 60 to 90 days, their §1692e(10) claim in that respect would still fail, as the HUD letter was not a communication "in connection with the collection of any debt."

Plaintiffs also allege that the letter falsely represented that if plaintiffs did not send in the enclosed documents within 20 days of the date of the letter, they would be required to move from their home. Complaint, ¶ 11(d). The statements in the letter speak for themselves and are not false. The letter accurately reflects the pertinent regulations. The letter correctly stated that if the occupant wished to remain in the house, a written request had to be received by HUD within 20 days from the date of the letter. See §203.676. The letter also correctly stated that if the occupant did not reply to the HUD office in writing within 20 days from the date of the letter, the occupant would be required to move from the property on some future unspecified date. See §203.678 ("HUD will require that the property be conveyed vacant if the occupant fails to request permission to continue to occupy within the time period specified in §203.676[.]").

In their memorandum, plaintiffs also argue that the letter falsely represented that plaintiffs would be required to move from

their home within 20 days if they failed to file a petition with HUD. As discussed previously, the letter specified no time limit for vacating the property, as no date had been set for the acquisition of the property by HUD.

The complaint fails to allege facts sufficient to state a violation of §1692e. Plaintiffs' §1692e claims do not survive in any event due to the fact that the HUD letter was not conduct taken "in connection with the collection of any debt."

3. Alleged Violations of §1692f

Defendant argues that plaintiff has failed to allege a violation of §1692f, which states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Complaint, ¶ 11(e). Plaintiffs allege that defendant violated §1692f(6)(A), which prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if– (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]" §1692f(6)(A). The complaint itself does not specify the nature of the alleged nonjudicial action. In their memorandum, plaintiffs contend that the nonjudicial means used by defendant was the HUD letter.

The HUD letter, addressed to "OCCUPANT," contains no threats that defendant or Wells Fargo would take possession of plaintiffs' property by nonjudicial means. The letter only referred to the pending foreclosure action, a judicial proceeding. The letter itself did nothing to achieve possession of the property. The letter did not encourage or threaten the occupant to leave the property. It simply provided notice, as required under §203.675,

to the occupant of the property about HUD's policies regarding the continued occupancy of property conveyed to HUD, and provided relevant information about how the occupant could apply to remain in the property.  In addition, as noted previously in Section III.A., the notice does not take or threaten any action in order "to collect or attempt to collect any debt."  <u>See</u> §1692f(6)(A). The complaint fails to state a claim under §1692f(6)(A).

<u>IV. Conclusion</u>

In accordance with the foregoing, defendant's motion to dismiss (Doc. 9) is granted, and plaintiffs' complaint is dismissed for failure to state a claim for which relief may be granted.


Date: April 29, 2013          <u>          s/James L. Graham          </u>
                              James L. Graham
                              United States District Judge

22